Roland Au SBN 270085
6185 Kimball Avenue
Chino, CA 91708
Telephone: (626) 965-8882
Facsimile: (909) 248-2348
Email: roland.au@karatpackaging.com

Attorney for Plaintiff LOLLICUP USA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOLLICUP USA INC., a California corporation, | Case No.: |
| Plaintiff, | **COMPLAINT FOR:** |
| vs. | **1) FRAUD;** |
| PRECISION BIOTECHNOLOGY CO. LTD., a | **2) CONVERSION;** |
| Taiwan corporation; INTERNATIONAL | **3) BREACH OF CONTRACT** |
| PRECISION CORP.; an unknown foreign | |
| business entity; MING-KUNG YEH, an | **[JURY TRIAL DEMANDED]** |
| individual; and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff LOLLICUP USA INC., a California corporation, by and through the undersigned attorney, hereby complains against Defendants PRECISION BIOTECHNOLOGY CO. LTD, a Taiwan corporation; INTERNATIONAL PRECISION CORP., an unknown foreign business entity; MING-KUNG YEH, an individual, and DOES 1 through 10, inclusive, (collectively, "Defendants"), and alleges as follows:

## SUMMARY OF THE CASE

1.      This action concerns an egregious fraudulent scheme of an individual using interchangeable foreign business entities to swindle millions of dollars from a California corporation and exploiting pandemic.

2.      The individual defendant held himself out as a trusted public figure and used feigned business entity to contract for sale of personal protective gear at the peak of pandemic. Defendants never intended to deliver the goods. Indeed, Defendants had neither the resources nor capability to manufacture the goods as needed during pandemic.

3.      Upon receipt of the pre-paid contracted amount, Defendants then moved the money to other non-traceable accounts and denied any connection with the contracting parties.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff LOLLICUP USA INC. ("Plaintiff" or "LOLLICUP") is a corporation organized and existing under the laws of the State of California, with its principal place of business in this judicial district, including entering into the contracts referenced in this complaint and suffering the wrongdoing and harms described in this complaint.

5.      On information and belief, Defendant PRECISION BIOTECHNOLOGY CO. LTD. ("PBC") is, and at all times relevant to this Complaint was, a business entity organized and existing under the laws of Taiwan, with a headquarters located in New Taipei City, Taiwan. PBC was marketed as an international conglomerate developing anti-cancer drugs and promoting health and safety of the world.

6.      On information and belief, Defendant INTERNATIONAL PRECISION CORP. ("IPC") is, and at all times relevant to this Complaint was, an unregistered business entity located in Taipei City, Taiwan.

7.     On information and belief, Defendant MING-KUNG YEH ("YEH") was and is the officer, director, controlling shareholder and owner of both PBC and IPC, who was personally responsible for overseeing, supervising, directing and/or ratifying the wrongdoing of the corporate defendants in Taiwan.

8.     At all times relevant herein, YEH used his various companies, including IPC and PBC, interchangeably and as alter egos of himself and one another.

9.     Plaintiff is unaware of the true names and capacities of the Defendants sued by the fictitious names, DOES 1 through 10, but allege that said fictitiously names Defendants are proximately responsible for the damages alleged herein. Plaintiff will seek leave of this court to amend this complaint when the true names and capacities of said fictitiously named defendants have been ascertained.

10.     Plaintiff is informed and believe and thereon alleges, that at all times herein mentioned, Defendants and each of them, were the agents and/or employees of each of the remaining Defendants, and in doing the things herein alleged, were acting within the course and scope of said agency and/or employment, in that the actions of each of the Defendants as herein alleged were authorized, approved, and./or ratified by each of the other Defendants as principals and/or employers.

11.     This Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. §1332(a). Plaintiff is a registered business in California and primarily conducts business in California. Plaintiff also has its principal location in this Judicial District. No Defendant in this case is a citizen of the same state as Plaintiff and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants in the following respects:

    a. Defendants have purposely availed of protection of the laws of the State of California because this action "arise[s] out of or relate[s] to the defendants' contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

b. On information and belief, YEH solicited businesses from various companies in California including Plaintiff between February and May of 2020. YEH's fraudulent scheme is continuous and ongoing, and YEH is targeting California businesses.

c. Defendants acknowledged and agreed to deliver goods to a location in this Judicial District.

13.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(f) because substantial part of the events giving rise to the claim occurred in this Judicial District. The decision to purchase goods at issue were made in this Judicial District and the goods at issue were to be delivered to this Judicial District.

## BACKGROUND AND GENERAL ALLEGATIONS

14.    YEH had engaged in a fraudulent scheme to exploit pandemic. At all times relevant to this Complaint, YEH marketed himself, on internet platforms, as the Head of the Pharmaceutical Administration, Ministry of National Defense in Taiwan from 2011 to 2013, the General Director of the Taiwan Food and Drug Administration, Ministry of Health and Welfare (MOHW) from 2013 to 2014, and a superintendent in MOHW from 2014 to 2016.

15.    In the beginning of 2020, at the peak of pandemic, when personal protective equipment was in high demand, YEH started soliciting to various businesses, including but not limited to various Asian businesses in California, that he could supply surgical masks, gloves, and forehead thermometers in great quantity and with instantaneous delivery because of his previous position with MOHW and connection to a medical equipment manufacturer in Thailand.

16.    In or about June 2020, LOLLICUP, through its procurement agent, responded to YEH and expressed interest in purchasing large quantity of nitrile medical grade exam gloves (the "Gloves") from YEH.

17.    YEH provided LOLLICUP specifications of the Gloves through his personal email: mkyeh2004@gmail.com  and company email: mkyeh2004@precisionthera.com.

18.     PBC's company website is: https://precisionthera.com/ and YEH's picture is shown on the company website as the chief executive officer. LOLLICUP was led to believe that the contracting parties was PBC.

19.     The specifications provided by YEH apparently match LOLLICUP's needs and the parties agreed on the price of $7 USD per box. In June and July of 2020, LOLLICUP submitted four orders for a total 385,500 boxes of Gloves to YEH.

20.     YEH thereafter provided four proforma invoices (the "Invoices") to LOLLICUP confirming his receipt of four orders. The Invoices however were issued from IPC, not PBC. IPC's address, which was printed on the top left corner of the Invoices, is the same address as PBC at the time. The Invoices state that the buyer is "Lollicup USA Inc." with an address at "6185 Kimball Ave Chino, 91708 United States," and IPC's bank account information for wire transfer was printed clearly on the top right corner. The Invoices were signed by YEH as chairman of IPC. A true and correct copy of the Invoices is attached hereto as Exhibit A.

21.     YEH represented that IPC was his other company and he primarily used IPC for international businesses.

22.     On July 18, 2020, LOLLICUP wired 50% of the purchase price for the four orders of Gloves in a total sum of $1,347,500.00 USD to the bank account as stated on the Invoices per YEH's request.

23.     According to the agreement, the first batch of the Gloves would be departed Thailand no later than August 14, 2020, and LOLLICUP would receive the shipping document in advance.

24.     Instead of shipping documents, LOLLICUP received a video clip from YEH stating that the Gloves had been packed and loaded in Thailand. In the video, blue gloves were crammed inside several garment bags in a resembling sweat factory environment. Workers without facemask picked up the gloves with bare hands showing the goods to the camera. It was uncertain if the gloves had been through the sterilization process and the goods apparently were recycled from other sources. LOLLICUP immediately averred that medical grade gloves should not be packed in such unorganized fashion and insanitary condition.

25.     LOLLICUP later received 31,940 boxes of gloves from YEH. The gloves did not conform with the agreed specifications and did not even meet the industry standard. LOLLICUP timely and rightfully rejected delivery and urged YEH to reship conforming goods.

26.     As of the date of this Complaint, neither YEH nor any of YEH's controlled business entities cured this default by delivering conforming goods to LOLLICUP.

27.     YEH repeatedly requested for postponement to deliver the rest of the orders ascribing to lack of materials and the changed export requirements of Thailand government.

28.     LOLLICUP asserted that YEH breached the contract by failure to deliver conforming goods by the agreed delivery date and therefore demanded full refund from YEH.

29.     In his responses, YEH admitted the breach and apologized for his failure to meet the deadline. YEH also agreed to fully refund LOLLICUP.

30.     In the following months, YEH continuously made promises to LOLLICUP that he would deliver the Gloves at a future date disregarding his breach and LOLLICUP's numerous demands for full refund.

31.     On information and belief, various U.S. businesses like LMNT Accessories LLC and Marlott Company were also conned into paying YEH.

32.     In or about November 2020, LOLLICUP and other U.S. businesses that had been defrauded by Defendants, filed both civil and criminal claims against YEH and his controlled companies in Taiwan.

33.     In answering the Taiwanese complaints, YEH acknowledged the fact that IPC received $1,347,500.00 USD from LOLLICUP but someone had transferred most of the monies to another account, which was owned and controlled by a third-party. YEH also argued that he was not in privity with LOLLICUP because he had no connection with IPC.

34.     The Taiwanese court nevertheless dismissed LOLLICUP's case citing IPC was an unregistered company in Taiwan. The court cited that there was lack of privity between YEH or PBC and LOLLICUP despite the plain fact that both companies were owned and controlled by YEH.

35.     On information and belief, Taiwanese courts might treat YEH with partiality because YEH is an influential person in the Taiwan political system and he is well connected with several government agencies.

36.     On information and belief, other cases filed by certain U.S. businesses against YEH were also dismissed by the Taiwanese court for lack of privity.

37.     LOLLICUP thereafter filed an appeal to Taiwan higher court, but the case was again dismissed for lack of new evidence.

38.     On information and belief, YEH was and is dishonest in his conduct of business, incompetent and incapable to supply conforming goods to the U.S. buyers, and that YEH is targeting various businesses in California selling defective goods or producing non-shipment of goods after receipt of prepayment.

39.     As a direct and proximate result of YEH's breach of contract and fraudulent activities as described herein, LOLLICUP has suffered and will continue to suffer significant damages.

40.     Among other things, LOLLICUP is entitled to receive full refund of the deposit for the four orders, as well as interest on the paid amount.

41.     Among other things, LOLLICUP is entitled to receive its attorney fees incurred in enforcing the rights to enforce the contract entered by and between LOLLICUP and YEH and his companies because such fees are a foreseeable consequence of YEH's breach and fraudulent activities.

## FIRST CAUSE OF ACTION – FRAUD

### (AGAINST ALL DEFENDANTS)

42.     LOLLICUP realleges and incorporates by reference the allegations of each of the other paragraphs set forth in this Complaint.

43.     In or about June 2020, YEH, acting on behalf of himself and the corporate defendants, falsely represented to LOLLICUP's procuring agent that he was willing and able to deliver 385,500 boxes of Gloves to LOLLICUP's location in California, on a price and terms,

provided, however, LOLLICUP would be required to wire at least 50% of the contracted price as prepayment.

44.     That statement was false and was intended to induce detrimental reliance because YEH knew or should have known that he did not have the Gloves or the capacity to cause the Gloves manufactured in the specifications required by LOLLICUP.

45.     Instead, on information and belief, at the time of the supposed promise, YEH planned to take the funds remitted from LOLLICUP for his personal uses.

46.     Thereafter, instead of delivering shipment of conforming goods as promised, YEH shipped the non-sterile vinyl gloves to LOLLICUP knowing that the gloves did not conform to the orders.

47.     By the end of August 2020, the agreed delivery date had passed and YEH had breached the contract by failure to deliver goods as promised.

48.     Plaintiff demanded YEH refund the prepaid $1,347,500.00 USD.  YEH falsely represented that he would issue a refund because YEH intended to mislead Plaintiff by getting more time to move the funds to another account.

49.     Plaintiff, in reliance on YEH's promise of a full refund, did not immediately take further action to pursue claims against Defendants.

50.     Subsequently, Plaintiff discovered that YEH had no intent to honor that promise either.

51.     On information and belief, YEH thereafter wired approximately USD $1.2 million to a third-party account.  On information and belief, that third-party is an affiliate of the other Defendants and a co-conspirator in their fraud.

52.     Because YEH acted willfully, wantonly, and fraudulently, with malice and reckless and or conscious disregard for Plaintiff's rights, and because each individual defendant acted with the express approval and/or ratification of the corporate defendants, Plaintiff is entitled to an award of punitive damages against all Defendants.

///

///

## SECOND CAUSE OF ACTION – CONVERSION

### (AGAINST ALL DEFENDANTS)

53.    LOLLICUP realleges and incorporates by reference the allegations of each of the other paragraphs set forth in this Complaint.

54.    Defendants demanded prepayment for the orders and obtained a wire transfer from Plaintiff in the amount of $1,347,500.00 USD under false pretenses.

55.    Defendants intentionally delivered non-conforming goods and produced non-shipment of conforming goods to Plaintiff. Defendants' conduct was intentional.

56.    Plaintiff has demanded that Defendants return the $1,347,500.00 USD taken wrongfully.

57.    Defendants transferred approximately $1.2 million USD to a third party affiliate of theirs, without Plaintiff's knowledge, authorization, approval, or ratification.

58.    Plaintiff was damaged in an amount to be proven at trial, at least $1,347,500.00 USD and in no event less than the jurisdictional amount.

## THIRD CAUSE OF ACTION – BREACH OF CONTRACT

### (AGAINST ALL DEFENDANTS)

59.    LOLLICUP realleges and incorporates by reference the allegations of each of the other paragraphs set forth in this Complaint.

60.    In or about June of 2020, Plaintiff entered into oral, written and implied agreement with Defendants ("Agreement"), as evidenced by the Invoices provided by Defendants.

61.    Under the terms of this Agreement, as demanded by Defendants, Plaintiff was required to make, at least 50% of the contracted price, prepayment in exchange for 385,500 boxes of nitrile medical grade exam gloves to be delivered on a set schedule to California, USA.

62.    From June 25, 2020 through July 18, 2020, Plaintiff complied with the prepayment terms by wiring a total sum of $1,347,500.00 USD from United States to an account in Chang Hwa Commercial Bank in Taiwan as instructed by Defendants.

63.    Plaintiff never received any nitrile medical grade exam gloves from Defendants.

64.     Plaintiff performed all conditions, covenants and promises in accordance with the terms and conditions of the Agreement. To the extent any covenants and/or conditions have not been performed by Plaintiff, they have been excused by breach or non-performance by Defendants.

65.     Defendants breached the Agreement because nothing was delivered to Plaintiff despite the Agreement.

66.     As a direct and proximate result of Defendants' breaches, Plaintiff has sustained and will continue to sustain damages in an amount subject to proof at trial, together with prejudgment interest thereon at the maximum legal rate.

## PRAYER FOR RELIEF

WHEREFORE, LOLLICUP prays for judgment against Defendants as follows:

1.     Order Defendants to disgorge all funds received from the contract together with prejudgment interest thereon.

2.     Order Defendants to pay for the punitive and exemplary damages due to their unlawful conduct available in law and according to proof at trial.

3.     Order Defendants to pay for reasonable attorneys' fees to the extent allowed by law and for costs of suit incurred.

4.     Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

5.     Grant such other and further relief as this Court may determine to be just and necessary.

Dated: March 14, 2024

By: _____
     Roland Au
     Attorneys for Plaintiff
     LOLLICUP USA INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action so triable.

Dated: March 14, 2024



By: _____
Roland Au
Attorneys for Plaintiff
LOLLICUP USA INC.